# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

CIT BANK, N.A.,                                    :        Case No.: 15-cv-5814 (KAM)(RLM)

:

Plaintiff,                 :

:

-against-                                          :

:

ADAM JACH and MORTGAGE ELECTRONIC    :

REGISTRATION SYSTEMS, INC., AS                 :

NOMINEE FOR INDYMAC BANK, FSB,               :

:

Defendant.                 :

----------------------------------------------------------------X


**DEFENDANT ADAM JACH'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION, PURSUANT TO FED. R. CIV. P. 56 AND 53, FOR SUMMARY JUDGMENT AND FOR THE APPOINTMENT OF A REFEREE**

Andrei A. Popescu, PLLC
*Attorneys for Defendant JACH*
183 Carlton Avenue, 2R
Brooklyn, New York 11205
(917) 453-7902
Fax: (718) 336-1509
aaplaw@gmail.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. ....................................................................ii

PRELIMINARY STATEMENT..................................................................1

STATEMENT OF FACTS ........................................................................2

RELEVANT PROCEDURAL HISTORY ....................................................3

ARGUMENT .........................................................................................9

      PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ......9

      A. Plaintiff Has Failed To Demonstrate Its Standing .........................10

      B. This Action May Be Barred By A Prior Pending Action...............16

      C. This Action May Be Barred By The Rooker-Feldman Doctrine ...19

CONCLUSION. .....................................................................................23

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                            Page

<u>Aurora Loan Servs., LLC v. Mercius</u>, 138 A.D.3d 650, 29 N.Y.S.3d 462 (2d Dep't 2016)..........................................................................................................................11

<u>Aurora Loan Servs., LLC v. Taylor</u>, 25 N.Y.3d 355, 12 N.Y.S.3d 612 (2015)..........................................................................................................................12

<u>Bank of Am., N.A. v. Paulsen</u>, 125 A.D.3d 909, 6 N.Y.S.3d 68 (2d Dep't 2015)  14

<u>Caprer v. Nussbaum</u>, 36 A.D.3d 176, 825 N.Y.S.2d 55 (2d Dep't 2006)................11

<u>Colon v. Gold</u>, 166 A.D.2d 406, 560 N.Y.S.2d 470 (2d Dep't 1990)......................18

<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005) ..................19

<u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F. 3d 159 (3d Cir. 2010)...........................................................................................................................19

<u>GSL Enterprises, Inc. v. Citibank, N.A.</u>, 155 A.D.2d 247, 546 N.Y.S.2d 857 (1st Dep't 1989) ..............................................................................................................19

<u>HSBC Bank USA, N.A. v. Baptiste</u>, 128 A.D.3d 773, 10 N.Y.S.3d 255 (2d Dep't 2015).........................................................................................................................10

<u>JP Morgan Chase Bank, N.A. v. Hill</u>, 133 A.D.3d 1057, 21 N.Y.S.3d 363 (3d Dep't 2015).........................................................................................................................13

<u>Nev. First Fed., LLC v. Macciocca</u>, 2015 U.S. Dist. LEXIS 94462, 2015 WL 4461828 (E.D. Pa. 2015)..........................................................................................19

<u>Noyes v. Anderson</u>, 124 N.Y. 175, 26 N.E. 316 (1890)........................................20

<u>Saratoga County Chamber of Commerce, Inc. v Pataki</u>, 100 N.Y.2d 801, 766 N.Y.S.2d 654 (2003), <u>cert den</u>, 540 U.S. 1017, 124 S. Ct. 570, 157 L. Ed. 2d 430 (2003) ....................................................................................................................11

Stark v Goldberg, 297 A.D.2d 203, 746 N.Y.S.2d 280 (1st Dep't 2002) ...............11

U.S. Bank N.A. v. Handler, 2016 N.Y. App. Div. LEXIS 4548, 2016 N.Y. Slip.
Op. 04706 (2d Dep't 2016) .......................................................................................11

U.S. Bank Natl. Assn. v. Mathon, 29 Misc. 3d 1228A, 920 N.Y.S.2d 245 (Sup. Ct.,
Suffolk Co. 2010)..........................................................................................................9

Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423 (2d Cir. 2014).........22

Wells Fargo Bank, N.A. v. Rooney, 132 A.D.3d 980, 19 N.Y.S.3d 543 (2d Dep't
2015)..............................................................................................................................10

## Statutes

NY CPLR § 3211 (a) (4) ..............................................................................................18

NY CPLR § 4518 (a) ...................................................................................................15

Fed. R. Civ. P. 53...........................................................................................................1

Fed. R. Civ. P. 56...........................................................................................................1

## PRELIMINARY STATEMENT

Defendant ADAM JACH respectfully submits this Memorandum of Law in Opposition to the Plaintiff's instant Motion, pursuant to Fed. R. Civ. P. 56 and 53, whereby Plaintiff seeks summary judgment and the appointment of a referee. The Plaintiff's instant motion represents this Plaintiff's third attempt to obtain summary judgment against Mr. JACH, based upon essentially identical facts. Indeed, this Plaintiff has been denied summary judgment twice by the Supreme Court of the State of New York, County of Richmond. Plaintiff, having been twice denied the relief that it seeks by the State Court, now requests that same relief from this Court. For the reasons that follow, it is respectfully submitted that Plaintiff's motion should, for the third time, be denied in its entirety.

## STATEMENT OF FACTS

The pertinent facts are fully set forth in Mr. JACH's annexed Statement of Material Facts and, for the sake of brevity, will not be re-recited herein.  The Court's attention is respectfully directed to the contents of that document for a full statement of the pertinent facts, which are incorporated by reference herein.

## RELEVANT PROCEDURAL HISTORY

On or about June 2, 2010, Plaintiff's predecessor, Onewest Bank, FSB, commenced an action in the Supreme Court of the State of New York, County of Richmond, under Index No.: 130909/2010 (hereinafter the "First Action"), based upon the same mortgage loan that is the subject of the instant action (see EXHIBIT "A" to EXHIBIT " A" hereto).

The copy of the Note produced in the First Action did not contain any allonges, nor was there any mention by Plaintiff of any allonges in the First Action (see EXHIBITS "A" and "B" to EXHIBIT "A" hereto).

By Order dated December 10, 2012, the First Action was dismissed for lack of standing, without prejudice (see EXHIBIT " B" hereto)

On February 28, 2014, Plaintiff's predecessor, Onewest Bank, FSB, commenced a second action in the Supreme Court of the State of New York, County of Richmond, under Index No.: 135114/2014 (hereinafter the "Second Action"), based upon the same mortgage loan that is the subject of the instant action (see EXHIBIT "C" hereto).

The only substantive difference between the First Action and the Second Action, was that in the Second Action, Plaintiff also produced a "Corrective Assignment of Mortgage" dated December 23, 2013 (EXHIBIT "H" to EXHIBIT "I" hereto) and the aforementioned allonges (see EXHIBITS "B" and "C" to Plaintiff's moving papers, which contain copies of the Note and purported allonges).

In the Second Action, Defendant JACH moved for summary judgment dismissal of the Second Action and Plaintiff cross-moved for summary judgment and for an Order of Reference, as it is doing in the instant action (see EXHIBIT "G" hereto).  The motion and cross-motion were determined by Order dated October 7, 2014 (EXHIBIT "D" hereto), which referred the

matter to a Special Referee to hear and report on "standing and any other related issues"). A hearing was held on December 3, 2014, before Special Referee Peter Geis (see **EXHIBIT "E"** hereto). On January 20, 2015, Special Referee Geis issued a Report and Recommendation (**EXHIBIT "F"** hereto), recommending "that the Court find that plaintiff did not have standing to commence this action."

Neither party moved to confirm or to disaffirm the Special Referee's Report and Recommendation, and no Order was formally issued by the State Court adopting the Special Referee's Report and Recommendation (see **EXHIBIT "G"** hereto). As such, no final, appealable Order was ever actually rendered by the State Court in the Second Action.

Plaintiff commenced this third action on October 8, 2015 (see EXHIBIT "B" to Plaintiff's moving papers).

Defendant JACH interposed his Answer on October 28, 2015, which included affirmative defenses of lack of standing and prior pending action (EXHIBIT "H" to Plaintiff's moving papers).

Discovery was conducted from January 12, 2016 through July 15, 2016 (see ECF Docket herein, Docket Nos.: 14-26).

On May 19, 2016, Plaintiff was served with Defendant JACH's First Set of Interrogatories and Notices of Deposition (see "Defendant's Exhibits 'A', 'B' and 'C'" to **EXHIBIT "I"** hereto). The Notices of Deposition requested production of Sandra Schneider, Vice President CIT BANK, N.A. and Lisa C. Payne, Assistant Vice President CIT BANK, N.A. The Notices set a deposition date of June 13, 2016 for both witnesses, so as to permit Plaintiff the maximum time to produce the witnesses, while remaining within the Court's deadline.

Plaintiff served its Answers and Objections to Interrogatories on June 10, 2016 (see "Defendant's Exhibit 'A' to **EXHIBIT "I"** hereto), which were largely non-responsive.

In response to the Notices of Deposition, on June 13, 2016, Plaintiff produced neither Sandra Schneider nor Lisa C. Payne, as requested. Plaintiff instead produced a New Jersey-based client representative named Ronald Cafone. A copy of the Deposition Transcript of Mr. Cafone, with deposition exhibits, is annexed hereto as **EXHIBIT "I"**.

During the deposition, Mr. Cafone was largely evasive and without any first-hand knowledge (or any knowledge, for that matter) as to the subject Assignments of Mortgage or Allonges.

After further conferences with one another, and with Chief Magistrate Judge Roanne L. Mann, the parties agreed to a Deposition upon Written Questions of Plaintiff's Vice President, Sandra Schneider, the person who allegedly executed the subject allonges (see ECF Docket herein, Docket Nos.: 20-26). A copy of Mr. JACH's Notice of Deposition Upon Written Questions is annexed hereto as **EXHIBIT "J"**. A copy of Plaintiff's Response to Defendant JACH's Notice of Deposition Upon Written Questions is annexed hereto as **EXHIBIT "K"**.

In relevant part, Ms. Schneider testified as follows:

"Do you know what an allonge is?

RESPONSE TO QUESTION NO. 28:

Subject to the foregoing objections, Schneider responds as follows: Yes.

If yes please describe, to your knowledge, what an allonge is.

Subject to the foregoing objections, Schneider responds as follows: It's a paper allonge with the appropriate borrower's information on it...

Please look at the seventh (7th) page of the document that has been marked as Defendant's Exhibit "1", is that your signature that appears above your printed name on the document?

<u>RESPONSE TO QUESTION NO. 29:</u>

Subject to the foregoing objections, Schneider responds as follows: Yes.

If yes:

a)      Did you actually ever sign this document?

Subject to the foregoing objections, Schneider responds as follows: I don't remember signing the original of this document.

If yes, when?

Subject to the foregoing objections, Schneider responds as follows: I don't recall.

b)      Is the signature that appears on the documents a signature that you generated with your own hand, using a writing instrument such as a pen or pencil?

Subject to the foregoing objections, Schneider responds as follows: I don't recall because I don't remember signing the original.

c)      Is the signature that appears on the documents a facsimile or copy of your signature?

Subject to the foregoing objections, Schneider responds as follows: What I am looking at is a copy.

If yes, did you personally affix the copy of your signature to the document, and, if yes, when?

Subject to the foregoing objections, Schneider responds as follows: On the original? I don't recall…

d)      Did anyone request that you sign, or cause to be signed with your signature, the document?

Subject to the foregoing objections, Schneider responds as follows: For this particular loan? I don't recall…

6

Please look at the eighth (8th) page of the document that has been marked as Defendant's Exhibit "1"), is that your signature that appears above your printed name on the document?

RESPONSE TO QUESTION NO. 32:

Subject to the foregoing objections, Schneider responds as follows: Yes.

If yes:

a)      Did you actually ever sign this document?

Subject to the foregoing objections, Schneider responds as follows: The original? I don't recall this, either.
If yes, when?

Subject to the foregoing objections, Schneider responds as follows: I don't recall.

b)      Is the signature that appears on the document a signature that you generated with your own hand, using a writing instrument, such as a pen or pencil?

Subject to the foregoing objections, Schneider responds as follows: I don't recall.

c)      Is the signature that appears on the documents a facsimile or copy of your signature?

Subject to the foregoing objections, Schneider responds as follows: What I'm looking at is a copy.

d)      If yes, did you personally affix the copy of your signature to the document, and, if yes, when?

Subject to the foregoing objections, Schneider responds as follows: On the original? I don't recall."

Ms. Schneider's testimony makes it clear, among other things, that she has no personal knowledge or recollection of the circumstances surrounding her purported execution of the subject allonges.

On August 4, 2016, a pre-motion conference was held in this matter, and the Court directed as follows:

> "The court set the following briefing schedule for the parties' cross-motions: The moving parties shall serve their motions no later than September 14, 2016. Oppositions shall be served on the moving parties by October 5, 2016. Replies shall be served (and the fully-briefed motions filed via ECF) on October 12, 2016. The court encouraged the parties to pursue good faith settlement negotiations. The parties should notify the court immediately if this matter settles" (see ECF Docket herein, Docket Nos.: 28-29).

On September 16, 2016, Plaintiff's counsel in the Second Action interposed a motion seeking 1) discontinuance of that action, and 2) cancellation of the *Lis Pendens* therein (see **EXHIBITS "G" and "H"** hereto).

On October 5, 2016, the Court issued the following directive in response to Mr. JACH's letter motion for an enlargement of time:

> "[D]efendant's motion is untimely and fails to adequately explain how the state court motion referenced in defendant's letter affects the viability of this action. Accordingly, defendant's motion is granted in part and denied in part. Opposition briefs shall be served on the moving parties by October 19, 2016. Replies shall be served (and the fully-briefed motions filed via ECF) on October 26, 2016.

Pursuant to the Court's directive, Mr. JACH hereby interposes his Opposition to Plaintiff's motion. For the reasons that follow, Plaintiff's motion should be denied in its entirety.

8

## ARGUMENT

## PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiff treats this action, in its moving papers, as if the action were now being brought for the first time.  Plaintiff entirely overlooks the fact that, for practical purposes, this is a case that has been litigated since 2010 and dismissed at least once.  In doing so, Plaintiff entirely ignores the issues previously discussed with this Court, particularly the propriety of the purported allonges, which resulted in this Court's denial of the Plaintiff's first request to move for summary judgment, as premature.

The allonges are significant under New York law because the Court is within its discretion to consider the issue of whether Plaintiff has unclean hands, based upon the use robo-signed endorsements in blank, assignments and allonges, and to invoke its equitable powers in this case upon a finding of unclean hands. See U.S. Bank Natl. Assn. v. Mathon, 29 Misc. 3d 1228A, 920 N.Y.S.2d 245 (Sup. Ct., Suffolk Co. 2010), which held:

> "[S]ince an action claiming foreclosure of a mortgage is one sounding in equity... the act by Plaintiff of commencing of this action inescapably invokes the Court's equity jurisdiction. While it is to be noted that the formal distinctions between an action at law and a suit in equity have been abolished in New York... the Supreme Court nevertheless is fully vested with equity jurisdiction and the distinct rules governing equity are still extant... speaking generally and broadly, it is the settled law of this jurisdiction that 'Stability of contract obligations must not be undermined by judicial sympathy'... However, it is true with equal force and effect that equity must not and cannot slavishly and blindly follow the law... finally, as decreed by our Court of Appeals in the matter of Noyes v. Anderson 124 NY 175, 26 N.E. 316 (1890) 'A party having a legal right shall not be permitted to avail himself of it for the purposes of injustice or oppression'... here, the Court has serious and grave concerns regarding Plaintiff's conduct in this matter, which appears to be rife with bad faith." Id. at 9-10 [citations omitted].

9

It is respectfully submitted that Plaintiff has failed to produce any meaningful discovery with respect to the allonges, as the purported signatory of those documents testified that she has no recollection as to same.

Even if the questions of fact surrounding the propriety of the allonges were not an issue, Mr. JACH sets forth viable defenses of lack of standing.

Mr. JACH also sets forth a viable defense of a prior pending action, depending on the outcome of the Plaintiff's motion to discontinue the Second Action.   Furthermore, it is respectfully submitted that this action is barred by the Rooker-Feldman Doctrine, which bars what is effectively an appeal of a state court decision in a Federal District Court; the applicability of the Rooker-Feldman Doctrine also is dependent upon whether there is a final disposition of the Second Action.

Additionally, it is respectfully submitted that based upon this case's history in the State Court, the law of the case herein is that Plaintiff must prove its standing at a hearing before a trier of fact, based upon the State Court's determination in the Second Action that an evidentiary hearing was required on the issue of standing.

For all of these reasons, Mr. JACH respectfully requests that the Plaintiff's motion be denied in its entirety.

### A. Plaintiff Has Failed To Demonstrate Its Standing

It is well-established under New York law that "where… [as here] the plaintiff's standing has been placed in issue by reason of the defendant's answer, the plaintiff additionally must prove its standing as part of its prima facie showing". HSBC Bank USA, N.A. v. Baptiste, 128 A.D.3d 773, 774, 10 N.Y.S.3d 255 (2d Dep't 2015); see also Wells Fargo Bank, N.A. v. Rooney, 132 A.D.3d 980, 981, 19 N.Y.S.3d 543 (2d Dep't 2015) ("Where, as here, the plaintiff's standing

to commence the action is placed in issue by a defendant, the plaintiff must ultimately establish its standing to be entitled to relief").

"[S]tanding to sue is critical to the proper functioning of the judicial system. It is a threshold issue. If standing is denied, the pathway to the courthouse is blocked. The plaintiff who has standing, however, may cross the threshold and seek judicial redress." Saratoga County Chamber of Commerce, Inc. v Pataki, 100 N.Y.2d 801, 812, 766 N.Y.S.2d 654 (2003), cert den, 540 U.S. 1017, 124 S. Ct. 570, 157 L. Ed. 2d 430 (2003). "Standing to sue requires an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request." Caprer v. Nussbaum, 36 A.D.3d 176, 181, 825 N.Y.S.2d 55 (2d Dep't 2006). If a plaintiff lacks standing to sue, the plaintiff may not proceed in the action. Stark v Goldberg, 297 AD2d 203, 746 N.Y.S.2d 280 (1st Dep't 2002).

Typically, "a plaintiff has standing in a mortgage foreclosure action where it is the holder or assignee of the underlying note at the time the action is commenced... 'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation'... Generally, once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note" U.S. Bank N.A. v. Handler, 2016 N.Y. App. Div. LEXIS 4548, 2016 N.Y. Slip. Op. 04706 (2d Dep't 2016) [citations omitted].

In the context of a motion for summary judgment, New York law holds that "generally, in moving for summary judgment in an action to foreclose a mortgage, a plaintiff establishes its *prima facie* case through the production of the mortgage, the unpaid note, and evidence of default" Aurora Loan Servs., LLC v. Mercius, 138 A.D.3d 650, 29 N.Y.S.3d 462 (2d Dep't 2016).

<u>Aurora Loan Servs., LLC v. Taylor</u>, 25 N.Y.3d 355, 12 N.Y.S.3d 612 (2015) is the leading case in New York on the issue of what is required of a mortgage foreclosure plaintiff who has not produced an original note, in the context of a motion for summary judgment, where its standing has been questioned by an answering defendant.

In <u>Taylor</u>, New York's highest Court found "the affidavit... [of plaintiff loan servicer's] legal liaison, who stated that based on her 'personal knowledge' of the facts as well as her 'review of the note, mortgage and other loan documents' and 'related business records... kept in the ordinary course of the regularly conducted business activity'", sufficient to make a *prima facie* showing of standing. <u>Id</u>. at 356.

Specifically, the New York Court of Appeals noted that "the note, and not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law", and then addressed "the question... [of] whether Aurora adequately proved that it did, indeed, have possession of the note prior to commencement of this action." <u>Id</u>. The Court of Appeals then held:

> "Ms. Holland asserts in her affidavit that she examined the original note herself, and the adjustable rate note attachments submitted with the moving papers clearly show the note's chain of ownership through Deutsche. Although the better practice would have been for Aurora to state how it came into possession of the note in its affidavit in order to clarify the situation completely, we conclude that, under the circumstances of this case, the court did not err in granting summary judgment to Aurora." <u>Id</u>. at 362.

The Third Department of the New York Appellate Division has summarized the holding of the seminal Court of Appeals case, <u>Taylor</u>, *supra*, in relevant part, as follows:

"[T]he Court of Appeals recently addressed the degree of proof necessary to show possession of a note for purposes of standing. In that case, the plaintiff's representative averred, upon review of its business records and after examining the original note, that it had custody of the note prior to the commencement of the action. The defendants countered that more detail was required as to how the plaintiff acquired the note. While observing that 'the better practice would have been for [the plaintiff] to state how it came into possession of the note,' the Court determined that the trial court did not err in granting summary judgment to the plaintiff without requiring production of the original note, emphasizing that no such demand had been made... not to be overlooked is the fact that the allonge indorsing the note to the plaintiff in Aurora showed a specific chain of ownership to the plaintiff." JP Morgan Chase Bank, N.A. v. Hill, 133 A.D.3d 1057, 1058-1059, 21 N.Y.S.3d 363 (3d Dep't 2015).

In the case at bar, the only arguably admissible "evidence" that Plaintiff adduces in an attempt to demonstrate its standing is the Affidavit of Plaintiff's Assistant Secretary, Caryn Edwards.

Unlike in Taylor, there is no evidence in admissible form of an "allonge indorsing the note to the plaintiff... [showing] a specific chain of ownership to the plaintiff", because of the above-discussed and unresolved issues relating to the propriety of the allonges at bar.

Moreover, unlike the Affidavit of the loan servicer's legal liaison in Taylor, *supra*, the Affidavit of Ms. Edwards contains no statement from Ms. Edwards that she actually examined the original note herself prior to the commencement of the action, nor that she has ever seen the original note. Ms. Edwards merely swore: "I confirm that CIT BANK, N.A. had possession of the Promissory Note on 7/20/07. I confirm that CIT BANK, N.A. was in possession of the Promissory Note prior to October 8, 2015."

The most troubling aspect of the Edwards Affidavit, is not merely its boilerplate, fill-in-the-blanks format and overall glibness, although the conclusory assertions of that Affidavit do

render same insufficient with respect to a motion for summary judgment.  In Bank of Am., N.A. v. Paulsen, 125 A.D.3d 909, 910-911, 6 N.Y.S.3d 68 (2d Dep't 2015), the Second Department of the New York Appellate Division held:

> "[H]ere, the evidence the plaintiff tendered in support of that branch of its motion which was for summary judgment on the complaint did not establish that the note was physically delivered to it prior to the commencement of the action… in particular, the affidavit of Benjamin Walter Hassett, an employee of the plaintiff, which was submitted in support of the plaintiff's motion, contained conclusory statements regarding the plaintiff's possession of the note, and did not give any factual details of a physical delivery" [citations omitted].[1]

The most troubling aspect of the Edwards Affidavit is the assertion that Plaintiff came into "possession of the Promissory Note on 7/20/07," a mere eight (8) days after the loan was made by the originating lender IndymMac Bank, F.S.B. (see EXHIBITS "B" and "C" to Plaintiff's moving papers, which contain copies of the Note, showing a loan date of July 12, 2007).   Ms. Edwards' statement is contradicted by the deposition testimony of Plaintiff's own witness, Mr. Cafone, who testified at his deposition that IndymMac Bank, F.S.B. failed in 2008 and was taken over in receivership by the FDIC, and that the FDIC transferred the asset to Plaintiff in 2009 (see EXHIBIT "I" at 29-30, 33-34).   Indeed, the FDIC's absorption of IndymMac Bank, F.S.B., and the FDIC's 2009 transfer of various IndymMac Bank, F.S.B. assets to Plaintiff's predecessor in March 2009, are matters of public record, of which the Court is

---

[1] While Paulsen is a pre-Taylor case, it is respectfully submitted that the crucial distinction in Taylor is that the affiant therein swore that she actually reviewed the original note prior to commencement, which, in and of itself, rendered her sworn statements more than conclusory, and therefore compensated for what was otherwise factually lacking in her affidavit.  It is further respectfully submitted, that since Caryn Edwards, the affiant herein, makes no such sworn statement as to the original note, the holding of Paulsen remains controlling authority at bar- a conclusion which is supported by JP Morgan Chase Bank, N.A. v. Hill, supra.

respectfully requested to take judicial notice.[2]

It is respectfully submitted that the above mentioned statement of Ms. Edwards, which is contradicted by Plaintiff's own witness, Mr. Cafone, and by the FDIC's official records, in and of itself raises issues of fact necessitating the denial of Plaintiff's motion.

Moreover, the Edwards Affidavit constitutes inadmissible hearsay with respect to the crucial issue of whether Respondent actually possessed the Note, by physical delivery, at the time of commencement.

Affidavit testimony must be in admissible form, and is therefore subject to "the business records exception to the hearsay rule". See Aurora Loan Servs., LLC v. Mercius, *supra*, ("under the business records exception to the hearsay rule (see CPLR 4518[a])... 'A proper foundation for the admission of a business record must be provided by someone with personal knowledge of the maker's business practices and procedures'... Woods, an employee of Nationstar, did not attest that he was personally familiar with the record keeping practices and procedures of the plaintiff ... Wood's assertions based on these records were inadmissible, and '[s]ince the motion was predicated on evidence that was not in admissible form, the plaintiff failed to establish its prima facie entitlement to judgment as a matter of law'"); NY CPLR § 4518 (a).

That Affidavit of Ms. Edwards contains no attestation that she is personally familiar with the Plaintiff's record keeping practices with respect to the original Note (or to the keeping of original notes in general). Ms. Edwards merely attests that she is familiar with Plaintiff's "business records", which include "data compilations, electronically imaged documents and others" (see Edwards Affidavit at ¶ 2). The Edwards Affidavit therefore constitutes inadmissible

---

[2] https://www.fdic.gov/about/freedom/indymacsharedlossagrmt.pdf
https://www.fdic.gov/about/freedom/IndyMacMasterPurchaseAgrmt.pdf
https://www.fdic.gov/about/freedom/IndyMacLoanSaleAgrmt.pdf

hearsay with respect to that most crucial issue of whether Respondent physically possessed the original Note at the time of commencement.   The Second Department of the New York Appellate Division held, in U.S. Bank N.A. v. Handler, *supra*, that:

> "[H]ere, the plaintiff failed to establish, prima facie, that it had standing to commence this action. The evidence submitted by the plaintiff did not demonstrate, prima facie, that the note was physically delivered to it prior to the commencement of the action... the plaintiff is not the original lender on the note, and the plaintiff's complaint, verified by the plaintiff's attorney, contains no allegation that the note was delivered or assigned to the plaintiff, or that the plaintiff was in possession of the note. The affidavit from a vice president of the plaintiff's servicing agent, who did not attest that he was personally familiar with the plaintiff's record keeping practices with respect to the note, failed to establish, prima facie, that the plaintiff had physical possession of the note prior to the commencement of the action. Furthermore, the submission by the plaintiff of two different copies of the note with endorsements raises a triable issue of fact as to whether the note was assigned to the plaintiff prior to the commencement of the action... accordingly, the Supreme Court properly denied that branch of the plaintiff's motion which was for summary judgment on the complaint insofar as asserted against the Handlers." Id. at 3-4 [citations omitted].

For all of the above reasons, it is respectfully submitted that Plaintiff has failed to make a *prima facie* showing of standing.

### B. This Action May Be Barred By A Prior Pending Action

The Plaintiff's motion in the Second Action seeking discontinuance of that action an cancellation of the *Lis Pendens* therein (see **EXHIBITS "G" and "H"** hereto), is presently returnable on October 19, 2016.

While Plaintiff may argue that the Second Action has been marked "disposed" by the State Court, no final Order has been rendered by that Court adopting the Special Referee's

Report and Recommendation (**EXHIBIT "F"** hereto) "that the Court find that plaintiff did not have standing to commence this action."

Furthermore, even if the State Court had adopted that Report and Recommendation, that would not necessarily result in dismissal of the Second Action.

In Aurora Loan Servs., LLC v. Mercius, *supra*, the Second Department of the New York Appellate Division explained the effect of a finding that a plaintiff lacks of standing in a mortgage foreclosure action. That Court held:

> "[T]he Supreme Court erred in granting the defendant's cross motion for summary judgment dismissing the complaint insofar as asserted against him for lack of standing and to cancel the notice of pendency filed against the subject property. '[T]he burden is on the moving defendant to establish, prima facie, the plaintiff's lack of standing, rather than on the plaintiff to affirmatively establish its standing in order for the motion to be denied. To defeat a defendant's motion, the plaintiff has no burden of establishing its standing as a matter of law'… Here, the defendant, as the moving party, failed to make a prima facie showing that the plaintiff lacked standing." Id. at 4-5 [citations omitted].

Insofar as there has been no finding in the Second Action that the Defendant affirmatively demonstrated Plaintiff's lack of standing, but only a finding that the Plaintiff failed to demonstrate its own standing at the hearing, the Special Referee's Report and Recommendation, even if it had been adopted in an Order, would not necessarily be dispositive with regard to the Second Action.

At all times herein, it has been Mr. JACH's position that the instant action should be maintained in the State Court, in the County where the property is located. As such, Mr. JACH's counsel in the Second Action are opposing the Plaintiff's motion to discontinue, which, if denied, would result in Plaintiff having two active litigations against Mr. JACH –the Second Action and this action, in different courts, based upon the same subject matter.

As such, it is respectfully submitted that this Court, if the Court does not deny Plaintiff's instant motion for summary judgment outright, should hold the motion in abeyance pending the resolution of Plaintiff's State Court motion.   The State Court's denial of the motion for discontinuance could render this action dismissible on the basis of a prior pending action.

Under New York law, a court is vested with discretion to dismiss an action if it is identical to another pending action.  "CPLR 3211 (a) (4) provides that a party may move for judgment dismissing one or more causes of action on the ground that there is another action pending between the same parties for the same cause of action in a court of any State or the United States.  Dismissal on this ground, however, is not mandatory.  Trial courts are vested with broad discretion in considering whether to dismiss an action on the basis of a prior pending action."  Colon v. Gold, 166 A.D.2d 406, 407, 560 N.Y.S.2d 470 (2d Dep't 1990).

Notwithstanding the Second Department's recognition of the discretionary nature of a dismissal based upon prior pending action, that Court held that:

> "[S]ince an identical action was commenced against Herbert Gold on or about August 7, 1987, the amended summons and complaint dated December 7, 1987, was purely duplicative in nature.  The conduct of the plaintiffs' counsel in indiscriminately commencing multiple lawsuits emanating from the same underlying event will not be condoned.  Under these circumstances, the Supreme Court erred in failing to dismiss pursuant to CPLR 3211 (a) (4) the amended summons and the complaint dated December 7, 1987, insofar as it is asserted against Herbert Gold." Id.

The First Department of the New York Appellate Division is in accord, holding:

> "[T]he instant complaint was properly dismissed because 'a pending action existed between the same parties for essentially the same relief and involving the same actionable wrong'... Plaintiff, in the instant complaint, expands on its pleadings of fact and adds new causes of action that are different in form. Nonetheless, both complaints essentially seek relief on the basis of defendant's alleged failure to fulfill contractual obligations to obtain a

18

Certificate of Occupancy for a building sold to plaintiff by defendant's subsidiary, and to indemnify plaintiff for actions brought by tenants of the subject building." GSL Enterprises, Inc. v. Citibank, N.A., 155 A.D.2d 247, 546 N.Y.S.2d 857, 858 (1st Dep't 1989) [citations omitted].

As such, it is respectfully submitted that the Plaintiff's instant motion, if not denied for failure to demonstrate standing, should be held in abeyance pending the determination of the Plaintiff's State Court motion.

**C. This Action May Be Barred By The Rooker-Feldman Doctrine**

In the event that the Second Action is deemed disposed based upon the Special Referee's finding of lack of standing, then this action should be deemed barred by the Rooker-Feldman Doctrine.

The Rooker-Feldman Doctrine precludes a Federal District Court from exercising subject-matter jurisdiction over a suit that is essentially an appeal of a state court decision. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. It is based on the principle that only the United States Supreme Court, and not a federal district court, has the authority to review state court judgments. Id. at 292. The elements that must be established for the Rooker-Feldman Doctrine to bar a claim for lack of subject matter jurisdiction are: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state court judgment'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F. 3d 159, 166 (3d Cir. 2010).

<u>Nev. First Fed., LLC v. Macciocca</u>, 2015 U.S. Dist. LEXIS 94462, 2015 WL 4461828 (E.D. Pa. 2015) is on point.  The Eastern District of Pennsylvania summarized the relevant facts therein as follows:

> "[O]n April 3, 2013, Plaintiff filed a complaint in mortgage foreclosure in the Court of Common Pleas of Delaware County, Pennsylvania... Plaintiff alleged that the Promissory Note and Mortgage entered into by Defendants were in default in virtue of: (a) Defendants' failure to make payments when due... According to the complaint, Defendants had been in default since April 8, 2011... Plaintiff requested judgment for foreclosure of the mortgaged premises in the amount of $2,282,286.45... On August 8, 2014, a bench trial on the matter was held before the Honorable Charles B. Burr of the Court of Common Pleas of Delaware County... On August 12, Judge Burr entered a nonsuit and dismissed Plaintiff's foreclosure action with prejudice... Judge Burr's decision to grant a nonsuit was based on his finding that there was a significant gap in proof... The court agreed that there was something outstanding on the loan but was not sure what the correct amount was or whether Plaintiff's numbers had been calculated properly in accordance with GAAP... Judge Burr reasoned: '[A]ssuming there's a 'default' . . . for failure to provide this financial information, that gets you halfway up the football field. You're at the 50 yard line. I don't think you can cross the goal line though because assuming that to be true, we don't know what the proper calculation under GAAP, that is the Generally Accepted Accounting Principles doctrine, applies in this case and calculating the amount due under that procedure, what that would be. We don't know'... Plaintiff filed the current federal action for mortgage foreclosure on March 11, 2015... In this suit, Plaintiff alleges that the Promissory Note and Mortgage are in default by virtue of: (a) Defendants' failure to make payments when due since December 15, 2012... Plaintiff seeks a judgment fixing the amount due on the mortgage; directing that Defendants pay the amount due plus interest, attorney's fees and costs; directing that the property be sold to satisfy the amount due; and barring and foreclosing Defendants of all equity of redemption in and to the property." <u>Id.</u> at 3-6.

The defendant in Macciocca sought dismissal of the Federal action, based upon the Rooker-Feldman. The Eastern District of Pennsylvania found in relevant part, with respect to newly alleged defaults claimed in the Federal action:

> "[H]ere, Plaintiff brings a foreclosure action in federal court nearly two years after it brought a foreclosure action on the same property in Pennsylvania state court.... There is not a complete overlap of the bases for foreclosure in both suits; failure to pay real estate taxes had not been raised in the state court action, and failure to maintain an adequate debt service coverage ratio and to provide financial information have not been raised in this federal action... Plaintiff's complaint is based in part on defaults due to non-payment that were not, and could not have been, alleged in the state court action against Defendants. Defendants allegedly failed to make monthly payments prior to April 3, 2013, when Plaintiff filed its mortgage foreclosure action in state court, alleging, inter alia, default due to non-payment. Then, after the state court granted a nonsuit on these claims on August 12, 2014, Defendants again allegedly failed to make monthly payments. Each missed installment payment under a promissory note accompanying a mortgage constitutes a separate default... To the extent that the current suit is based on the later alleged missed payments, the action can therefore proceed and is not barred by the Rooker-Feldman doctrine." Id. at 13-15.

However, with respect to the defaults that were also claimed in the State Court action, The Eastern District of Pennsylvania held:

> "[T]he Court concludes Rooker-Feldman does bar Plaintiff's foreclosure action to the extent it is based on default due to alleged failure to make payments before August 12, 2014. To adjudicate Plaintiff's claims stemming from these alleged non-payments would require the Court to review the correctness of the state-court judgment that there was no basis for foreclosure on the grounds of failure to make monthly payments as of that date.  This Court believes that the Great Western facts are sufficiently distinguishable to reach a result that the Rooker-Feldman doctrine does bar this action to the extent it is based on failure to make payments before August 12, 2014. It is important to note that Great Western concerned allegations that a state judicial process was corrupted by conspiracy and violation of due process, which is a totally different type of case than foreclosure on a debt. This Court

21

will adopt the ruling and rationale of the Second Circuit in
Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423 (2d
Cir. 2014). Although the procedural history of Vossbrinck is more
complicated, it is basically the same type of case. The bank had
moved for foreclosure in state court, which was granted. The
defendant in the state court case then brought an action in U.S.
District Court for the District of Connecticut to have the
foreclosure declared null and void because of fraud by the
defendants in the state-court action. The Second Circuit applied
Rooker-Feldman to conclude that there was not jurisdiction." Id. at
17-18.

The Plaintiff's instant Federal action is based upon the same allegations as the State

Court actions, and Plaintiff's Complaint herein adds no new allegations of subsequent defaults.

It is respectfully submitted that the Rooker-Feldman Doctrine bars the instant action as

effectively an appeal of a State Court judgment, in the event that the Second Action is

determined to be disposed.

## CONCLUSION

For the reasons discussed above, this Plaintiff has failed to demonstrate its standing, and therefore, it has failed to make a *prima facie* showing of entitlement to summary judgment. Furthermore, based upon this case's history in the State Court, the law of the case herein is that Plaintiff must prove its standing at a hearing before a trier of fact, based upon the State Court's determination in the Second Action that an evidentiary hearing was required on the issue of standing. Additionally, Mr. JACH has viable defenses of prior pending action and/or lack of subject matter jurisdiction, based upon the Rooker-Feldman Doctrine, depending on whether the Second Action is determined to have been dismissed. The material issues of fact present in this matter are abundant. For these reasons, it is respectfully requested that Plaintiff's motion be denied in its entirety, together with such other and further relief as is just and proper.

Dated: Brooklyn, New York
      October 17, 2016

Respectfully submitted,

Andrei A. Popescu, PLLC
Andrei A. Popescu (AP6118)
*Attorneys for Defendant JACH*
183 Carlton Avenue, 2R
Brooklyn, New York 11205
(917) 453-7902
Fax: (718) 504-4290
aaplaw@gmail.com

23