UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

CIT BANK, N.A.,

**MEMORANDUM AND ORDER**

                Plaintiff,                          15-CV-5814(KAM)(RLM)

        -against-

ADAM JACH, et al.,

                Defendants.

-------------------------------------X
**MATSUMOTO, United States District Judge:**

                Plaintiff CIT Bank, N.A. ("plaintiff" or "CIT Bank")
commenced this action on October 8, 2015, by filing a complaint
seeking foreclosure on a residential mortgage due to default by
defendant Adam Jach ("defendant" or "Jach").[1]  Prior to bringing
this action in federal court, CIT Bank, through its predecessor,
twice sought foreclosure of the mortgage in New York State
Supreme Court, County of Richmond—both times unsuccessfully.
During the pendency of its second state action (the "Second
Action"), CIT Bank commenced the instant action.

                Plaintiff moved for summary judgment and a judgment of
foreclosure and sale.  (ECF No. 36.)  After oral argument, the
court denied plaintiff's motion without prejudice, subject to
plaintiff's supplementation of the evidentiary record.  (*See*

---

[1]     Defendant Mortgage Electronic Registration Systems, Inc. has not
appeared or responded, and on December 22, 2015, the Clerk of Court issued an
entry of default against it.  (ECF No. 12.)

Docket Order dated Jan. 4, 2017.) The court also stayed the action for 60 days pending resolution of the Second Action in state court. (*Id.*) Defendant then moved under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") seeking to dismiss plaintiff's complaint for a lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, and under Federal Rule of Civil Procedure 56 ("Rule 56") for summary judgment pursuant to the related doctrines of *res judicata* and collateral estoppel. (ECF No. 59, Def. Notice of Mot. at 1.) For the reasons discussed below, the court finds that none of these doctrines operate as a bar to plaintiff's claims, and defendant's motions are DENIED in their entirety.

## BACKGROUND

The following recitation of facts is drawn from defendant's statement of material facts pursuant to Local Rule 56.1 ("Def. 56.1 Stmt.") and the parties' respective briefs; the facts are undisputed unless otherwise indicated.[2] Jach obtained a loan from IndyMac Bank, F.S.B., on June 12, 2007, in the

---

[2]    It does not appear that plaintiff submitted a response to defendant's statement of undisputed material facts pursuant to Local Rule 56.1. If a nonmoving party fails to comply with local rules governing summary judgment, a district court may rely on a moving party's statement of undisputed facts as long as those facts are supported by the record. *Manolis v. Brecher*, 588 F. App'x 85, 86 (2d Cir. 2015) (citing *N.Y.S. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005)). Plaintiff's opposition to the instant motion included record citations primarily to defense counsel's declaration, and exhibits attached thereto, submitted in support of its motions. Accordingly, the court relies on defendant's undisputed and adequately supported Rule 56.1 Statement of Facts.

principal amount of $346,200, memorialized by a note (the

"Note") and secured by a mortgage (the "Mortgage") on property

located at 37 Nugent Avenue in Staten Island, New York (the

"Property"). (ECF No. 60, Pl. Opp. at 2-3; ECF No. 59-8,

Popescu Decl., Ex. G.) The Federal Deposit Insurance

Corporation, receiver for IndyMac, endorsed the Note to OneWest

Bank, plaintiff's predecessor.[3] (Pl. Opp. at 3; ECF No. 59-12,

Popescu Decl., Ex. K at 148, 151-52.)

Plaintiff alleges Jach defaulted sometime in 2010.

(Pl. Opp. at 3; ECF No. 59-4, Popescu Decl., Ex. C ¶ 14.)

OneWest Bank then initiated a foreclosure action in New York

State Supreme Court, County of Richmond, under Index No.

120909/2010 on June 2, 2010 (the "First Action"). (Def. 56.1

Stmt. ¶ 1.) This state-court action was dismissed without

prejudice for plaintiff's lack of standing on December 10, 2012.

(*Id.* ¶ 2.) On February 28, 2014, plaintiff's predecessor then

commenced the Second Action against Jach, concerning the same

Mortgage and Note, in New York State Supreme Court, under Index

No. 135114/2014. (*Id.* ¶ 3.) The parties cross-moved for

summary judgment, and the state court referred the matter to a

Special Referee who held a hearing in December 2014 to determine

"[s]tanding and any related issues." (*Id.* ¶ 4.)

---

[3]     OneWest Bank, effective August 3, 2015, changed its name to CIT Bank,
N.A. (Pl. Opp. at 3 n.1; *see also* Def. 56.1 Stmt. ¶ 1.)

At the hearing, plaintiff alleges its witness and assistant vice president, Alex Gomez, testified that plaintiff's predecessor was the owner of the Note, and was in physical possession of the Note prior to commencement of the Second Action. (Pl. Opp. at 4; Popescu Decl., Ex. K at 146-54, 162.) Plaintiff also claims it introduced the original Note into evidence at the hearing, (Popescu Decl., Ex. K at 154), which the Special Referee's report and recommendation and the state court's Dismissal Order confirm, (ECF No. 59-6, Popescu Decl., Ex. E, State Ct. J. at 3). Defendant's cross-examination of Gomez called into question the timeline of plaintiff's possession of the Note as of the commencement of the Second Action. (Def. 56.1 Stmt. ¶ 4.)

The Special Referee issued a report and recommendation on January 20, 2015, (*id.*), noting that "the issue of plaintiff's standing has been placed in issue before the court, resulting in the instant referral," (ECF No. 59-10, Popescu Decl., Ex. I at 2.) The Referee recommended the state court find that plaintiff had failed to establish possession of the Note prior to the time it commenced the Second Action and thus did not have standing to sustain the Second Action. (Def. 56.1 Stmt. ¶ 4.) The Referee noted that Gomez had "never s[een] the actual [N]ote until November of 2014" and that plaintiff apparently "physically transferred" the Note to counsel, though

"there was no evidence to indicate when such transfer may have occurred." (*Id.*)

On September 16, 2016, after CIT Bank commenced this lawsuit in federal court, it moved in state court to discontinue the Second Action. (*Id.* ¶ 6.) Defendant opposed this motion and further moved the state court to confirm the Special Referee's report and recommendation. (*Id.*) On February 16, 2017, the state court, Justice Minardo, decided the parties' respective motions, dismissing the Second Action with prejudice and making certain relevant findings of fact drawn from the Referee's report and recommendation. (*Id.* ¶ 7.) Specifically, the state court found that "plaintiff ha[d] failed to introduce any evidence that it received the [N]ote . . . prior to February 28, 2014," the date the Second Action was commenced, and had "failed to sustain its burden of proof on the issue of standing." (*Id.*) The state court reiterated the Referee's finding that plaintiff had produced the original Note at the hearing, and defendant did not dispute that the Note was the original or that he had executed it. (*Id.*) The state court also noted that plaintiff had filed its federal lawsuit during the pendency of the Second Action. (*Id.*) The state court then granted plaintiff's motion for voluntary discontinuance, and defendant's motion to confirm the Special Referee's report and

recommendation, but dismissed the Second Action "with prejudice." (*Id.* ¶ 8.)

CIT Bank appealed the dismissal order and moved to renew and reargue, which motion was denied on July 13, 2017. (*Id.* ¶¶ 9-11.) As of the date of this Order, the court understands plaintiff's appeal is still pending before the Second Department of the New York State Appellate Division, without scheduled argument, and the parties have not informed the court of any relevant decision in the pending appeal. (*Id.* ¶ 13.)

**LEGAL STANDARDS**

**I.   Rule 12(b)(1)**

Defendant challenges plaintiff's assertion of subject matter jurisdiction under Rule 12(b)(1) pursuant to the *Rooker-Feldman* doctrine. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)).

In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Furthermore, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Banks-Gervais v. Medicare Contractor*, No. 12-CV-6339, 2013 WL 1694870, at *2 (E.D.N.Y. Apr. 16, 2013) (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006)). Where subject matter jurisdiction is lacking, "dismissal is mandatory." *Id.; see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S.*, 386 F.3d at 110 (citing *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) and *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

## II. **Rule 56**

Defendant moves in the alternative for summary judgment under Rule 56. Summary judgment shall be granted to a

movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact. *Rojas*, 660 F.3d at 104. In deciding a summary judgment motion, the "court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by, inter alia, "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Put another way, "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus.*, 475 U.S. at 587.

**DISCUSSION**

### I. *Rooker-Feldman*

Defendant argues that the court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine, which bars the instant action as, in effect, a review of a state court's judgment. (ECF No. 59-16, Def. Mot. at 9.) Plaintiff responds that its injury, the defaulted Mortgage, predates the state-court proceedings and was thus not caused by it; that no judgment exists because no final determination was made on the merits; that it does not seek rejection of the state court judgment; and that it had commenced this action before the state judgment issued. (Pl. Opp. at 13-16.)

"Under the *Rooker-Feldman* doctrine, the 'lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments.'" *Murphy v. GE Capital Asset Corp.*, 38 F. App'x 86, 86-87 (2d Cir. 2002) (quoting *Kropelnicki v.* Siegel, 290 F.3d 118, 127 (2d Cir. 2002)); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). Four requirements must be met before *Rooker-Feldman* bars a federal district court's jurisdiction. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d

77, 85 (2d Cir. 2005). "First, the federal-court plaintiff must have lost in state court." *Id.* Second, the plaintiff's complained of injuries must be "caused by [a] state-court judgment[.]" *Id.* (alterations in original). Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." *Id.* (alterations in original). Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced." *Id.* As to this fourth requirement, *Rooker-Feldman* does not apply to federal-court suits proceeding in parallel with ongoing state-court litigation. *Id.*

All four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar. *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018). The Second Circuit has described the second requirement, that the plaintiff complains of an injury *caused* by a state-court judgment, as the "core requirement" from which the other requirements derive. *Id.* (quoting *Hoblock*, 422 F.3d at 87). "A federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* (quoting *Hoblock*, 422 F.3d at 88). "The applicability of the *Rooker-Feldman* doctrine turns not on the similarity between a

party's state-court and federal-court claims . . . but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKitchen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 1997). When the exact injury complained of in federal court existed prior in time to the state-court proceedings, the state-court judgment could not have caused it. *Id.* at 98.

The doctrine applies to "both matters directly decided in the state court and matters 'inextricably intertwined' with the determinations of the state court." *Murphy*, 38 F. App'x at 86-87 (applying *Rooker-Feldman* to dismiss complaint "essentially ask[ing the court] to conclude that the state court foreclosure action was invalid and should be reversed"). "[A] plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker-Feldman*." *Hoblock*, 422 F.3d at 87.

Applying the first element of *Rooker-Feldman*, the parties do not dispute that plaintiff lost in state court. As for the second element, however, defendant asserts that the merits of its argument turns largely on "how the term 'Judgment' is defined," and points to *dicta* in *Hoblock* that cited to an Eighth Circuit case. (Def. Mot. at 7.) Defendant also appears to tie the second and fourth requirements of *Rooker-Feldman* together, and concludes that the state court denial of summary

11

judgment "constituted a 'Judgment' for *Rooker-Feldman* purposes" primarily because plaintiff "has at all times treated the state-court's pre-dismissal with prejudice findings as effectively a final disposition of the Second Action." (*Id.*) Thus, defendant argues, the federal action was commenced *after* a final judgment in the Second Action and satisfies the fourth requirement. This, however, is not the standard, and defendant cites to no controlling authority that supports his position. "*Rooker-Feldman* does not 'support[] the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in federal court.'" *Pulk v. Winter*, 722 F. App'x 36, 39 n.6 (2d Cir. 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)). On this basis alone, the court could find that the *Rooker-Feldman* doctrine does not deprive this court of jurisdiction in plaintiff's federal case.

The court further finds, however, that as to the second requirement, the core of *Rooker-Feldman*, plaintiff does not appear to be complaining of injuries *caused* by the state court judgment. Indeed, plaintiff commenced this action before the state court judgment issued, whether or not plaintiff anticipated that judgment, and claims the Dismissal Order is "irrelevant to this action." (Pl. Opp. at 21.) The court agrees. Plaintiff claims injuries related to defendant's

alleged default, injuries that might have been *relieved* by a favorable decision in the state court (*e.g.* foreclosure), but were not *caused* by the state court decision. Thus, the injury is not caused by the state-court judgment but "left unpunished by it." Likewise, and relevant to the third requirement of *Rooker-Feldman*, plaintiff does not seek reversal of the state court's judgment here, and this court need not address whether the state court's decision in the Second Action was made in error. Indeed, a resolution of the dispute between the parties in this court will not disturb the state court's judgment.

Thus, the *Rooker-Feldman* doctrine does not apply to bar plaintiff's claims in this case, and defendant's motion to dismiss for a lack of jurisdiction is denied. By allowing this action to proceed, the court "do[es] not risk turning [the] federal district courts into quasi-appellate courts sitting in review of state-court decisions." *Sung Cho*, 910 F.3d at 649.

## II. *Res Judicata*

The court next considers defendant's motion for summary judgment under the doctrines of *res judicata* and collateral estoppel. Both doctrines are affirmative defenses, and may be properly considered in a summary judgment motion when pleaded by defendant. *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999); *see also Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). The Second Circuit has explained that

"the obvious starting point in a preclusion analysis is a
determination of the issues that were litigated in the first
action." *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999).

*Res judicata* bars a party or its privies from
relitigating issues that were or could have been raised in a
prior action decided by a final judgment on the merits. *St.
Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000). Federal
courts are to give "the judicial proceedings of any [State]
court" the "same full faith and credit . . . as they have by law
or usage in the courts of such State." 28 U.S.C. § 1738; *see
also Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir.
1994) ("[A] state court judgment has the same preclusive effect
in federal court as the judgment would have had in state
court."). Therefore, a New York state judgment must be given
the same preclusive effect in this court as it would have within
New York's courts. *See Marrese v. Am. Acad. of Orthopaedic
Surgeons*, 470 U.S. 373, 375 (1985); *see also Brown v. N.Y.S
Supreme Court for Second Judicial Dist.*, 680 F. Supp. 2d 424,
428 (E.D.N.Y. 2010); *Marvel Characters, Inc. v. Simon*, 310 F.3d
280, 286 (2d Cir. 2002) ("[T]here is no discernable difference
between New York and federal claim preclusion law."). Defendant
argues that the state court dismissal in the Second Action was
"on the merits, with prejudice" and that a New York state court
would not permit this action to proceed. (Def. Mot. at 12.)

14

Under New York law, there are four elements to the doctrine of *res judicata:* (1) there must be a final judgment in the first action; (2) that was rendered "on the merits;" (3) between the same parties in both actions; and (4) concerning the same claims in both actions. *In re Hunter*, 4 N.Y.3d 260, 269 (N.Y. 2005). New York takes a "transactional approach to *res judicata*" such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Sosa v. JP Morgan Chase Bank*, 822 N.Y.S.2d 122, 124 (N.Y. App. Div. 2006) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, (N.Y. 1981)). "A dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against the plaintiff." *Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (N.Y. 1999).

The party asserting the defense of *res judicata* bears the burden of showing "the existence of a prior judgment on the merits." *Miller Mfg. Co., Inc. v. Zeiler*, 45 N.Y.2d 956, 958, (N.Y. 1978). "A prior order that does not indicate an intention to dismiss the action on the merits is not a basis for the application of the doctrine of *res judicata*." *Espinoza v.*

*Concordia Int'l Forwarding Corp.*, 32 A.D.3d 326, 328 (N.Y. App. Div. 2006).

The United States Supreme Court has questioned the premise that "all judgements denominated 'on the merits' are entitled to claim-preclusive effect," and concluded that such a "premise is not necessarily valid." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501 (2001). The Court defined the phrase "dismissal without prejudice" to mean a "dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." *Id.* at 505. This permissive effect would also ("though not always") have the same effect "of not barring the claim from *other* courts." *Id.* (emphasis in original). In short, it does not follow that a dismissal "with prejudice" is necessarily "on the merits." *See D'Angelo v. City of New York*, 929 F. Supp. 129, 135 (S.D.N.Y. 1996) ("To hold that plaintiff's § 1983 claims are barred merely because the phrase 'with prejudice' is often equated with 'on the merits' would frustrate . . . the purpose of the rules of preclusion as defined under New York law.").

Courts in this Circuit have looked to the circumstances of a state court dismissal with prejudice to determine whether such judgment was final and on the merits. *See Hell's Kitchen Neighborhood Ass'n v. Bloomberg*, No. 05-CV-4806, 2007 WL 3254393, at *5 (S.D.N.Y. Nov. 1, 2007); *see also*

*Stacey O. v. Donald P.*, 137 A.D.2d 965, 965 (N.Y. App. Div. 1988) ("Even where a dismissal is specifically 'on the merits' or 'with prejudice[,]' the circumstances must warrant barring the litigant from further pursuit of his claim in order for those phrases to be given preclusive effect."); *but see Yonkers Contracting*, 93 N.Y.2d at 380 ("A dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against the plaintiff."). The inquiry considers whether the state court's decision suggests reliance upon procedural grounds rather than a determination on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001).

There is ample case law that a dismissal for lack of standing is not an adjudication "on the merits" for purposes of *res judicata*. *See, e.g.*, *Landau, P.C. v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 14 (N.Y. 2008)("[W]hen the disposition of a case is based upon a lack of standing only, the lower courts have not yet considered the merits of the claim."); *U.S. Bank Nat'l Ass'n v. Dellarmo*, 9 N.Y.S.3d 322, 323 (N.Y. App. Div. 2015); *Ricatto v. Mapliedi*, 20 N.Y.S.3d 395, 396-97 (N.Y. App. Div. 2015). That is so even when a judgment that was otherwise on procedural grounds included the phrase "with prejudice." *N.Y. Mortg. Agency v. Massarelli*, 167 A.D.3d 1296, 1297 (N.Y. App. Div. 2018). Claim preclusion "need not occur 'if the

original determination was actually narrower than would appear form the use of the phrase'" with prejudice.  *Id.*

In *Massarelli*, 167 A.D.3d 1296 (N.Y. App. Div. 2018), New York's Appellate Division considered whether *res judicata* barred a foreclosure action that was dismissed with prejudice on standing grounds.  The Appellate Division considered whether the record in the prior state court action suggested the Supreme Court intended the "extreme sanction" of a dismissal on the merits, and its preclusive effects.  *Id.* at 1296.  The order of dismissal in the original action "focused on plaintiff's ability to bring the [earlier] action rather than 'the merits of the claim' itself."  *Id.* at 1297.  Moreover, the Appellate Division noted that to give preclusive effect to the dismissal order in the first action "would bar a court from ever addressing the merits of plaintiff's mortgage foreclosure claim."  *Id.*  The *Massarelli* court thus gave "narrow construction" to the "with prejudice" language included in the order dismissing the prior state court action, and construed it to "'mean no more than' that plaintiff was precluded from commencing a new mortgage foreclosure action until it could establish standing to do so."  *Id.* (citation omitted).

Here, defendant has not demonstrated that a "judgment on the merits exists between the same parties involving the same subject matter."  *Ricatto*, 20 N.Y.S.3d at 396.  "The only

plausible reading of Justice [Minardo]'s decision is that he intended the [dismissal] 'with prejudice' to have preclusive effect only as to 'the question decided therein.'" *Hell's Kitchen*, 2007 WL 3254393, *6 (quoting *Farkas v. N.Y. Dep't of Civil Serv.*, 114 A.D.2d 563, 564 (N.Y. App. Div. 1985)). It is clear the dismissal in the Second Action was solely concerned with procedural issues related to the standing of CIT Bank's predecessor, and not the merits of its foreclosure claim. *Res judicata* does not bar this action because the disposition of the prior action was based *only* on a lack of standing and no court has yet to consider the merits of plaintiff's foreclosure case. Defendant's motion for summary judgment on *res judicata* grounds is therefore denied.

### III. Collateral Estoppel

Defendant argues in the alternative that collateral estoppel precludes plaintiff from arguing standing in this action. (Def. Mot. at 12.) As discussed above, a dismissal on jurisdictional grounds will not trigger *claim* preclusion, but may trigger *issue* preclusion or collateral estoppel. *Bank v. Spark Energy Holdings, LLC*, No. 13-CV-6130, 2014 WL 2805114, at *4 (E.D.N.Y. June 20, 2014) (citing *St. Pierre*, 208 F.3d at 401). Though *res judicata* operates as a bar for entire claims, collateral estoppel is a narrower doctrine that applies to

issues previously litigated between the same parties. *Sassower v. Abrams*, 833 F. Supp. 253, 264 (S.D.N.Y. 1993).

The doctrine of collateral estoppel "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (N.Y. 1985)); *see also Leather*, 180 F.3d at 425-26. Courts in this Circuit have routinely applied collateral estoppel to preclude a party from relitigating the issue of standing. *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360-61 (S.D.N.Y. 2014); *New Phone Co. v. N.Y.C. Dep't of Info. Tech. and Telecomms.*, No. 05-CV-1702, 2011 WL 6132256, at *8 (E.D.N.Y. Mar. 7, 2011) ("Unlike *res judicata*, dismissal of the [prior] complaint is given preclusive effect on the standing issue.") A determination that CIT Bank's predecessor could not bring its claim for lack of standing has issue-preclusive effect in this action only if this suit presents a jurisdictional issue that is identical to the issue that the state court decided. *Stengel v. Black*, 486 F. App'x 181, 183 (2d Cir. 2012).

The court finds that the issue of standing in the present action is distinct from the issue of whether plaintiff

had standing as of February 12, 2014, the date it commenced the Second Action. *See Nationstar Mortg., LLC v. Cogen*, 159 A.D.3d 428, 428-29 (N.Y. App. Div. 2018) ("Contrary to defendant's argument, the doctrine of collateral estoppel does not bar plaintiff from relitigating the issue of standing, because the issues in the prior action and the instant action are not identical."). Here, plaintiff only need show, under New York foreclosure law, that it had possession of the Note on the date it commenced *this* action, October 8, 2015. That is a different factual question than the state court determined in the Second Action.

Under similar factual circumstances, a Judge in this District found the issue of standing distinct from that of a prior action when predicated on different factual bases. *See CIT Bank N.A. v. Conroy*, No. 14-CV-5862, 2018 WL 3518504, at *4 (E.D.N.Y. July 20, 2018). When a plaintiff's state court claim is dismissed for lack of standing, New York state courts will not apply collateral estoppel in the face of "newly conferred rights that cured the lack of standing" or some other change in circumstances. *See Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*, 917 N.Y.S.2d 560, 560-61 (N.Y. App. Div. 2011); *see also Wells Fargo Bank, N.A. v. Ullah*, No. 13-CV-0485, 2014 WL 2117243, at *4 (S.D.N.Y. May 21, 2014) (permitting amendment and requiring plaintiff allege standing based on

"different circumstances" than those asserted before state court).  In *CIT Bank v. Conroy*, No. 14-CV-5862, 2018 WL 3518504 (E.D.N.Y. July 20, 2018), the court concluded that "the state court's decision [to dismiss for lack of standing] was concerned only with whether the plaintiff had standing when the state court foreclosure action was filed, and not after." *Conroy*, 2018 WL 3518504, at *4.  The court then noted that the plaintiff had proffered evidence to establish its standing, acquired in the interim period between the commencement of the state-court action and the commencement of this action.  *Id*.  Because the plaintiff's "basis for asserting standing [wa]s not the same as that asserted in state court, it [wa]s not precluded from seeking foreclosure" in federal court.  *Id*.

Here, it is undisputed that OneWest Bank, CIT Bank's predecessor, was in possession of the Note at least by the December 3, 2014 hearing before the Special Referee in the Second Action.  (Def. 56.1 Stmt. ¶ 4; *see also* Ex. E, State Ct. J. at 3.)  The standing issue in the Second Action concerned OneWest Bank's standing as of the date it commenced that action, February 28, 2014.  The issue in this case concerns CIT Bank's standing as of October 8, 2015, the date it commenced *this action*.  Standing is a fluid issue, and, though the court makes no specific findings as to plaintiff's standing to bring this action, plaintiff apparently acquired standing through its

undisputed possession of the Note, produced at the December 3, 2014 hearing.  Therefore, the standing issues in the state actions and this action are not identical for purposes of collateral estoppel, and plaintiff is not barred from bringing this foreclosure action on that basis.  Defendant's motion for summary judgment based on collateral estoppel is therefore denied.

## CONCLUSION

For the foregoing reasons, defendant Jach's motions are denied in their entirety.  The parties are to confer and submit a joint letter by April 15, 2019, to Magistrate Judge Mann to schedule a status conference.

**SO ORDERED.**
DATED: Brooklyn, New York
      March 27, 2019

<br>

_____/s/_____
**Kiyo A. Matsumoto**
United States District Judge